UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
SPARTANBURG DIVISION

| | | |
|---|---|---|
| Theodore Martin, Jr., | ) | |
| | ) | |
| Plaintiff, | ) | C/A No.: 7:14-cv-03508-GRA |
| | ) | |
| v. | ) | |
| | ) | **ORDER** |
| A. Celli Nonwovens Spa and A. Celli | ) | (Written Opinion) |
| International, Inc., | ) | |
| | ) | |
| Defendants. | ) | |

This matter comes before this Court on Defendant's Motion to Dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  ECF No. 6.  For the reasons set forth below, Defendant's Motion is GRANTED IN PART and DENIED IN PART.

## **BACKGROUND**

Plaintiff Theodore Martin, Jr. ("Plaintiff") was a machine operator at Fitesa Simpsonville, Inc. ("Fitesa") who was injured on October 24, 2012, when a slitter machine malfunctioned and crushed his hands.  ECF No. 1-1.  Plaintiff previously filed a lawsuit against Defendant A. Celli International, Inc. ("International") related to this incident and in May 2014, the Court, relying on Rules 12(b)(6)-(7), dismissed the complaint.  ECF Nos. 6-1 & 6-2.  Plaintiff then filed this case in the Spartanburg County Court of Common Pleas on August 7, 2014.  ECF No. 1-1.  International removed the case to this Court on September 2, 2014, ECF No. 1, and filed the present Motion to Dismiss pursuant to Rules 12(b)(6) on September 12, 2014.  ECF No. 6.  Plaintiff responded in opposition to Defendant International's Motion on September 29, 2014.  ECF No. 8.  International subsequently replied in support of its

Motion to Dismiss on October 8, 2014. ECF No. 9. This matter is now ready for ruling.[1]

## STANDARD OF REVIEW

Defendant International bases its Motion to Dismiss on Rule 12(b)(6) of the Federal Rules of Civil Procedure. ECF No. 6. Rule 12(b)(6) provides a defense to a claim for relief based on the other party's failure to state a claim upon which relief can be granted. A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of a complaint. *Randall v. United States*, 30 F.3d 518, 522 (4th Cir. 1994). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).

While analyzing Defendant's Motion, the District Court must construe all inferences in the light most favorable to the Plaintiff, and the motion should be granted only if the Plaintiff has no chance of prevailing on the merits of their arguments. See *Conley v. Gibson*, 355 U.S. 41, 45–46 (1957); *Chisolm v. TranSouth Fin. Corp.*, 95 F.3d 331, 334 (4th Cir. 1996). Therefore, Defendant's Motion "should only be granted if, after accepting all well-pleaded allegations in the plaintiff's complaint as true and drawing all reasonable inferences from those facts in the plaintiff's favor, it appears certain that the plaintiff cannot prove any set of facts in

---

[1] "Hearings on motions may be ordered by the Court in its discretion. Unless so ordered, motions may be determined without a hearing." Local Civil Rule 7.08 DSC.

support of his claim entitling him to relief." *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999). However, this Court is not required "to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences," nor must this Court "accept as true allegations that contradict matters properly subject to judicial notice or by exhibit." *Veney v. Wyche*, 293 F.3d 726, 730 (4th Cir. 2002) (quoting *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001)). This Court may consider the complaint, documents attached to the complaint, documents attached to the motion to dismiss, so long as they are integral to the complaint and authentic, and may properly take judicial notice of matters of public record. *Philips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009).

## DISCUSSION

Defendant International moves to dismiss Plaintiff's Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. ECF No. 6. This Court will address each of International's arguments below.

**I. Manufacturing Claims Against International**

The Court is not required to "entertain duplicative lawsuits, and it '"clearly ha[s] the right to take notice of its own files and records and it ha[s] no duty to grind the same corn a second time. Once was sufficient."' *Lester v. Greenville Cnty. of Court House*, CA 6:12-1318-TMC-TER, 2012 WL 2849391, *4 (D.S.C. June 7, 2012) (internal citation omitted). *Porter v. S. Carolina Dep't of Corr.*, 1:12-CV-435-RMG, 2012 WL 1119913 (D.S.C. Apr. 3, 2012) ("[the] Court is not required to entertain duplicative lawsuits"). See also *Mann v. Peoples First Nat. Bank & Trust Co.*, 209

F.2d 570, 572 (4th Cir. 1954) (upholding the District Court's taking of "judicial notice of the proceedings had before [it] in the prior suit" involving the same parties); *White v. Miller*, CA 8-11-144-HMH-KFM, 2011 WL 2066605 (D.S.C. May 4, 2011) ("a District Court may take judicial notice of materials in the Court's own files from prior proceedings").

The Plaintiff asserts no new facts or allegations that Defendant International is the manufacturer of the slitter machine from its previously dismissed complaint. ECF No. 1-1 & 6-1. In fact, the Plaintiff even goes as far as to say "he is not alleging A. Celli [International] is the manufacturer and will not pursue A. Celli International as the negligent manufacturer under a theory of direct liability." ECF No. 8. Therefore, under the theory of direct liability, this Court again holds that all manufacturing claims against International are dismissed, ECF No. 6-1, because Plaintiff still cannot "state a claim to relief that is plausible on its face" with regards to International being the manufacturer of the slitter machine. See *Ashcroft*, 556 U.S. at 678.

**II. Strict Liability Claim**

South Carolina's statute regarding strict liability states that a cause of action is only available against "[o]ne who sells any product." S.C. Code Ann. § 15-73-10. Consequently, South Carolina case law has held that S.C. Code Ann. § 15-73-10 only applies to the sale of products, and does "not apply to services." *In re Breast Implant Product Liability Litigation*, 331 S.C. 540, 546 (1998). See also *Pleasant v. Dow Corning Corp.*, No. 3:02-3180-17, 1993 WL 1156110, *5 (D.S.C. Jan. 7, 1993) ("[b]ecause the [Defendant] was primarily engaged in providing medical services, rather than the sale of goods, it cannot be liable under a theory of strict liability");

*Samson v. Greenville Hospital System*, 297 S.C. 409, 410 (1989).  Defendant International argues that they do not sell a product, but instead provide a service. ECF No. 6 & 9.  The Plaintiff seemingly agrees with International as evidenced by his Memorandum in Opposition in which he states that "A. Celli International is compensated to install, maintain and recalibrate the slitter machine. A. Celli International is also compensated for training the Fitesa employees." ECF No. 8 at 7.

The Plaintiff does, however, argue that International "should be strictly liable for the defective slitter machine due to its close connection to the slitter machine through the maintenance, repair, safety training, installation and recalibration of the computer system it performed on the slitter machine."  *Id.*  In support of its argument, Plaintiff points to *Walker v. DePuy Orthopaedics, Inc.*, 3:11-CV-02291-JFA, 2011 WL 4851197 (D.S.C. Oct. 12, 2011), in which the Court held that strict liability is available when "the defendant . . . exercised control over the defective product."  The Plaintiff also cites *Funchess v. Blitz U.S.A., Inc.*, CA 5:10-1634-MBS, 2010 WL 4780357 (D.S.C. Nov. 16, 2010), in which the Court held that for strict liability to apply, a defendant does not even need to be within the actual chain of distribution, but instead needs only a "participatory connection, for [its] personal profit or other benefit, with the injury-producing product and with the enterprise that created consumer demand for and reliance upon the product."  *Id*.  The facts in those cases, however, are not analogous to the case at hand.  The *Walker* case turns on whether S.C. Code Ann. § 15-73-10 applies to a distributor of a product and *Funchess* discusses whether an independent contractor salesman is a "seller" of a product.  *Walker*, at 4; *Funchess*, at 3-4.  It is important to note that both of those cases looked at the parties who were

involved in getting the product to market. In contrast, Defendant International is an after-purchase service provider having nothing to do with the actual sale of any product. Therefore, because of Defendant International's status as a service provider and not as a seller of any product, the strict liability claim against International fails and is dismissed.

### III. Unfair Trade Practices Act ("UTPA") Claim

To state a violation of the South Carolina Unfair Trade Practices Act ("SCUTPA"), the plaintiff must allege "(1) that the defendant engaged in an unlawful trade practice, (2) that the plaintiff suffered actual, ascertainable damages as a result of the defendant's use of the unlawful trade practice, and (3) that the unlawful trade practice engaged in by the defendant had an adverse impact on the public interest." *Ameristone Tile, LLC v. Ceramic Consulting Corp.*, 966 F. Supp. 2d 604, 621 (D.S.C. 2013). South Carolina case law has held that "[a]n act is 'unfair' when it is offensive to public policy or when it is immoral, unethical, or oppressive; a practice is 'deceptive' when it has a tendency to deceive." *Johnson v. Collins Entm't Co.*, 349 S.C. 613, 636 (2002). Further, "unfair or deceptive acts have an adverse impact upon the [public] if those acts have the potential for repetition." *Ameristone*, 966 F. Supp. 2d at 621. Plaintiffs' sole argument that Defendant International's acts are capable of repetition rest on the premise that International continues to be "actively engaged" in the slitter machine business. ECF No. 1-1 at 14. This argument fails because the Court has previously stated that "the mere fact that defendants are still engaged in business is not enough to establish a potential for future repetition." *O'Callaghan Cable Servs., Inc. v. Coastal Cable Const. Inc.*, 2:11-CV-00375-DCN,

2012 WL 4846983 (D.S.C. Oct. 11, 2012).  See also *Pulliam v. Clark*, 4:11-CV-03047-RBH, 2012 WL 1835717 (D.S.C. May 21, 2012) (dismissing UTPA claim because the "sole allegation" in regard to an "adverse public impact" was that repetition was possible since bank was still engaged in business); *Jefferies v. Phillips*, 316 S.C. 523, 529 (Ct. App. 1994) ("[m]ere proof that the actor is still alive and engaged in the same business is not sufficient to establish [potential for repetition] element").  Accordingly, this Court dismisses the UTPA claim for a lack of sufficient factual matter to support a plausible claim to relief.  See *Ashcroft*, 556 U.S. at 678.

**IV. Warranty Claims**

This Court has already noted that International is a service provider and not a seller or manufacturer of the slitter machine.[2]  Defendant International argues that Plaintiff's warranty claims are actually directed at the manufacturer and seller of the slitter machine and should not be imputed to it.  ECF. Nos. 6 & 9.  The Plaintiff, however, seemingly argues that his express warranty claim should stand because it is proper under S.C. Code Ann. § 36-2-313, entitled "Express warranties by affirmation, promise, description, sample."  ECF No. 8.  The Plaintiff's argument fails because according to S.C. Code Ann. § 36-2-102, the UCC's warranty provisions (including S.C. Code Ann. § 36-2-313) only "appl[y] to transactions in goods." Further, the Court has held that where the "major thrust of the contract [is] the performance of services," the contract is excluded from the scope of the Uniform Commercial Code.  *Ranger Const. Co. v. Dixie Floor Co.*, 433 F. Supp. 442, 445

---

[2] This deduction was based on a lack of any allegations by the Plaintiff that International is the "seller" or "manufacturer" and on admissions in the Plaintiff's Memorandum in Opposition of International's various provisions of services.  ECF No. 1-1 and 8.

(D.S.C. 1977). Thus, due to International's status as a service provider and not as a seller of goods, the express warranty claim is dismissed.

Defendant International also seeks to have dismissed any claims by the Plaintiff for implied warranty of fitness for a particular purpose or implied warranty of merchantability. South Carolina case law has held that "a sale must occur before an implied warranty can arise." *Breast Implant*, 331 S.C. 553. The Court in *Breast Implant* also noted that "it has been observed that the U.C.C.'s implied warranty appears "inapplicable to services." *Id*. (*citing* F. Patrick Hubbard & Robert L. Felix, *South Carolina Law of Torts* 262 (2d 1997)). Therefore, because International is a service provider and not a "seller," Plaintiff's claims for an implied warranty of fitness for a particular purpose and merchantability are dismissed.

Defendant International's final argument with regards to warranties is that the claim for an implied warranty of workmanlike service should be dismissed. International cites two reasons in support of this argument: "(1) the Complaint never asserts such a claim, and (2) such a claim only applies to builders who construct homes and therefore is inapplicable to A. Cell International and fails as a matter of law." ECF No. 9 at 6. The first reason fails because the Court reads the language in paragraph 35 of the Complaint to assert a claim for an implied warranty of workmanlike service. Paragraph 35 says in part that International "expressly and/or impliedly agreed . . . to maintain and/or repair the slitter machine in a good and workmanlike manner." ECF No. 1-1 at 11. As to its second reason, Defendant International cites to a South Carolina Court of Common Pleas trial order, *Pinckney v. Epcon Communities, Inc.*, No. 2010-CP-46-02326, 2013 WL 8474005, (S.C.Com.Pl.

Apr. 10, 2013).  In *Pinckney*, an implied warranty of workmanlike service claim was rejected because the defendant homeowners' association was not a "builder" and did not "construct" the plaintiff's homes, and therefore "did not give [and] could not have given a warranty of workmanlike service." *Id*. at 11.  Defendant International seems to assert that the implied warranty of workmanlike service should be limited to builders who construct homes.  This, however, is not the case, as demonstrated by *Hutson v. Cummins Carolinas, Inc.*, 280 S.C. 552 (Ct. App. 1984).  In *Hutson*, the South Carolina Court of Appeals said that, "[i]t is settled law that where a person holds himself out as specially qualified to perform work of a particular character, there is an implied warranty that the work which he undertakes to do shall be of proper workmanship and reasonably fitted for its intended purpose." *Id*.  Of particular importance in that case is the fact that the defendant was a dealership performing repairs on a truck, not a builder constructing a house. *Id*.  Accordingly, the Plaintiff has set forth a sufficient cause of action as to the existence of an implied warranty of workmanlike service; therefore, this cause of action will be allowed to proceed.

**V.  Amalgamation of Interests**

South Carolina case law allows liability to be shared between separate entities when the "evidence [has] revealed an amalgamation of the corporate interest, entities, and activities so as to blur the legal distinction between the corporations and their activities." *Magnolia N. Prop. Owners' Ass'n, Inc. v. Heritage Communities, Inc., 397 S.C. 348, 358 (Ct. App. 2012)* (internal quotation marks and citations omitted).  In applying South Carolina law, courts have looked at shared location, ownership, officers, directors, office space, phone numbers, and letterhead, as well as oversight

and supervision. *Id.* (citations omitted). Plaintiff's Complaint alleges that an amalgamation between the two Defendant corporations exists due to similarities in "offices, letterhead, owners, oversight, contact information and/or board members." ECF. No. 1-1 at 13. Defendant International argues that these allegations are "bald," "unspecified and vague," and "insufficient to sufficiently plead an amalgamation theory of liability." ECF. No. 6 at 8. The Court questions why the Plaintiff chose to produce the bulk of its evidence regarding amalgamation in its Memorandum in Opposition as opposed to introducing it in the Complaint.[3] The Court finds, however, that the pleadings in the Complaint are sufficient, albeit barely, to survive a Motion to Dismiss.[4] The alleged similarities meet the minimum threshold of being "sufficient" to "state a claim to relief that is plausible on its face." *Ashcroft*, 556 U.S. at 678. The amalgamation of interests theory of liability may proceed.

**VI. Negligence[5]**

International argues that Plaintiff's negligence cause of action should be dismissed because it "essentially contains no factual allegations other than vague ones that the company 'serviced and maintained' the slitter machine and that it provided safety training about the machine." ECF. No. 6 at 14. In order to establish a negligence cause of action in South Carolina, "the plaintiff must prove the following three elements: (1) a duty of care owed by defendant to plaintiff; (2) breach of that duty by a negligent act or omission; and (3) damage proximately resulting from the

---

[3] This is especially alarming considering Plaintiff's amalgamation claims in its original lawsuit were dismissed because he failed to allege in his complaint "sufficient facts to establish that the corporate distinctions between Defendant and A. Celli Nonwovens were so blurred that the corporations were essentially amalgamated." *Martin v. A. Celli Int'l, Inc.*, 7:14-CV-00095-GRA, 2014 WL 1912064 (D.S.C. May 12, 2014).

[4] "A memorandum in opposition or response . . . cannot remedy the defects in a party's complaint." *Booker v. Wash. Mut. Bank, F.A.*, 375 F. Supp. 2d 439, 441 (M.D.N.C. 2005).

[5] This section pertains to all negligence claims other than those for the manufacturing of the slitter machine.

breach of duty." *J.T. Baggerly v. CSX Transp., Inc.*, 370 S.C. 362, 368-69 (2006).  As discussed above, however, in order to survive a Rule 12(b)(6) motion to dismiss, Plaintiff need only allege "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft,* 556 U.S. at 678.  The Court finds that Plaintiff met this standard through its Complaint.  Paragraph 14 of the Complaint alleges sufficient factual matter with regards to the type of service, maintenance, management, and training that International had a duty to provide.  Paragraphs 17(a), 17(b), 17(d), 17(e), 17(f), 17(g), 17(i), 17(k), and 17(m) of the Complaint all allege detailed failures by International in the performance of its duties.  Finally, Plaintiff sufficiently alleges that International's negligence was "the direct and proximate cause of [his] hand being crushed."  ECF No. 1-1 at 7.  Accordingly, Plaintiff may proceed with his negligence cause of action.

## **CONCLUSION**

After a thorough review of the record, this Court finds that Defendant International's Motion to Dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure is GRANTED IN PART and DENIED IN PART.  The Motion to Dismiss is granted as to the following causes of action: negligence in manufacturing the slitter machine, strict liability, the Unfair Trade Practices Act claim, and all breach of warranty claims except for implied warranty of workmanlike service.  The Motion to Dismiss is denied as to the following causes of action: amalgamation of interests, implied warranty of workmanlike service and all negligence claims not including those for manufacturing the slitter machine.

**IT IS THEREFORE ORDERED** that Defendant's Motion to Dismiss is GRANTED IN PART and DENIED IN PART without prejudice.

**IT IS SO ORDERED.**

G. Ross Anderson, Jr.
Senior United States District Judge

October 28, 2014
Anderson, South Carolina